*Decision will be entered under Rule 50.*

REPUBLIC NATIONAL BANK OF DALLAS, TRUSTEE, TRANSFEREE, ESTATE OF R. B. GEORGE, DECEASED, TRANSFEROR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92189.   Filed October 12, 1962.

*L. E. Elliott, Esq.*, for the petitioner.
*Roy E. Graham, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* This proceeding involves a deficiency in Federal estate taxes in the amount of $60,808.60. In computing the amount of a charitable bequest, the Commissioner deducted administration expenses in the amount of $156,785.06 and thereby reduced the value of the charitable residue by this amount.

Petitioner's assignment of error is as follows:

4. The determination of the tax set forth in said Notice of Deficiency is based upon the error of the Commissioner in deducting from the gross estate, for the valuation of the charitable bequest, administration expenses which decedent's legal representative elected to deduct from the Estate's income tax returns instead of the Estate Tax return.

In support of the above assignment of error, petitioner, among other things alleged the following facts:

(b) Decedent's legal representative elected to deduct administration expenses aggregating $156,758.06 [*sic*] from the fiduciary income tax returns filed for the years 1956, 1957 and 1958, filed statements with said returns that said administration expenses had not been claimed in the Estate Tax return, and waived its right to have the same allowed in said return. No deduction from the Estate Tax return was claimed or allowed.

(c) All said administration expenses in the amount of $156,758.06 [*sic*] were actually paid from estate income, which was ample to cover all such expenses with a surplus to residue, and none was paid from corpus of the estate.

(d) Charity actually received the residue of the estate undiminished by reason of the administration expenses incurred and paid in the amount of $156,758.06 [*sic*].

In his answer, respondent denied that he erred as alleged in petitioner's assignment of error and also denied the correctness of the facts alleged by petitioner in the foregoing quoted paragraphs.

All the facts have been stipulated and are included herein by this reference. Only such facts as seem necessary to an understanding of the issue will be stated herein.

The petitioner, sometimes hereinafter referred to as Republic, is a national banking corporation with power to act as trustee under the laws of the State of Texas with its office in Dallas, Texas, and as such trustee, is transferee of the estate of R. B. George, decedent, transferor. Petitioner concedes that it is a transferee of the estate of R. B. George.

R. B. George, sometimes hereinafter referred to as decedent, died testate on March 2, 1956. His estate tax return was filed with the district director of internal revenue, Dallas, Texas, on May 31, 1957; a gross estate of $4,246,228.51 was reported. Republic and Cleo George, a sister of the decedent, were joint independent executors of decedent's estate. The estate was in administration from March 2, 1956, to November 25, 1959.

Under the terms of decedent's last will and testament, decedent specifically devised to his sister Cleo certain real and personal property and made a residuary bequest "after the payment of all debts, taxes of every nature, and expenses of last illness and funeral expenses" to Republic, in trust, to establish, among other things, two separate trusts in the amount of $50,000 each, and then to pay certain small sums out of the income from the remaining trust estate to each of several beneficiaries. The payment of the amounts to each of the several beneficiaries under the terms of the will was to become effective immediately on the decedent's death. As to the entire balance the will provided that:

4. The Trustee shall pay the net income from the Trust Estate to my sister, Miss Cleo George, for and during her lifetime, and upon the death of my said sister, the income from the said Trust shall be paid to my brother, W. H. George, for and during his lifetime. Provided, however, that in the event the total net amount available to my sister from her own income and from the income from the Trust Estate is insufficient to give her a total income of Seventy-five Thousand ($75,000.00) Dollars per annum, over and above all income taxes, the Trustee, shall invade the corpus of the Trust to the extent necessary to give her such annual net income of Seventy-five Thousand ($75,000.00) Dollars. This payment shall become effective immediately following my death. The written statement of my said sister stating the amount necessary to be paid to her * * * shall be conclusive on the Trustee as to the necessity for such payment, and the payment by the Trustee pursuant thereto shall be final, conclusive and absolutely binding on all other beneficiaries hereof. * * *

The will then provided that after the death of decedent's sister and brother, one-half of the trust fund then remaining was given as a residuary charitable bequest to be used to construct a memorial hospital or addition to an existing hospital to be known as the "R. B. George and Miss Cleo George Memorial Hospital." The income from the other remaining one-half interest of the trust fund was to be paid periodically by the trustee for the upkeep and maintenance of the hospital or addition.

The R. B. George trust was opened October 4, 1956, with a distribution from the estate of corpus in the amount of $321,453.98. During the fiscal years 1957, 1958, and 1959 the estate reported gross income as follows:

| Year | Amount |
|------|--------|
| 1957 | $142,770.58 |
| 1958 | 80,587.58 |
| 1959 | 49,195.33 |
|      | 272,553.49 |

The total income received by the executor of the estate, both taxable and tax exempt, was $412,323.49. Of the total income received by the estate, $119,055.53 was transferred to the trust.

The administration expenses of the estate totaled $156,785.06 and were paid by the executor out of the corpus funds of the estate. The estate elected to deduct this amount from the estate's fiduciary income tax returns as follows:

| Fiscal year ended— | Amount |
|---|---|
| Feb. 28, 1957 | $23,871.55 |
| Feb. 28, 1958 | 39,302.74 |
| Feb. 28, 1959 | 93,509.41 |
| Feb. 29, 1960 | 101.36 |
| | 156,785.06 |

Republic, as joint independent executor of the estate of R. B. George, kept bookkeeping records of all of the estate's receipts and disbursements. The receipts and disbursements were under headings called either "Principal Cash," which referred to the corpus of the estate, or "Income Cash," which was income from the corpus of the estate. This is shown by Exhibit 24–X which is attached to the stipulation of facts. The same exhibit shows that the estate's administration expenses of $156,785.06, in issue in this case, were all paid from the account designated as "Principal Cash."

Paragraph 9 of the stipulation of facts reads, in part, as follows:

9. The attached Exhibit 24–X is a transcript from the Petitioner's records showing its bookkeeping procedures regarding receipts and disbursements in the matter of the Estate of R. B. George. The heading "Principal Cash" refers to corpus or principal and "Income Cash" to income from corpus. * * *

Cleo George disclaimed any right to have the corpus of the trust invaded for her benefit for any amount in excess of $100,000 in the aggregate and this amount was used in computing the charitable deduction.

The parties disagree as to the value of a residuary charitable bequest made under decedent's will for estate tax purposes. Decedent's will, after disposing of certain real and personal property to his sister, gave the rest and residue in trust. After creating two separate trust funds, the will provided that the trustee was to pay a number of small annuities to stated individuals from trust estate income. The will further provided, in general, that the trustee pay the net income of the trust estate to decedent's sister for life and then to decedent's brother for life. After their deaths, one-half of the residuary bequest was to be used to construct a hospital or addition, and the income from the remaining one-half residuary interest was to be paid periodically for the upkeep and maintenance of the hospital. The will did not provide for the payment of estate administration expenses.

It is petitioner's position that the administration expenses of the estate were paid from income of the estate during administration and such expenses were claimed as deductions on the estate income tax returns and were not claimed on the decedent's estate tax return and

that these expenses should not again be deducted in computing the value of the charitable residue. Petitioner maintains that the corpus of the estate was not invaded to pay administration expenses but that such expenses were actually paid out of income and consequently the charitable residuary bequest consisting of corpus was not reduced in value.

Petitioner elected and was allowed to deduct the administration expenses on the income tax returns for the fiscal years 1957, 1958, 1959, and 1960 in accordance with sections 642(g) and 2053 of the Internal Revenue Code of 1954.[1] As to this, there is no issue. Respondent contends, however, that the residuary charitable bequest must be reduced by the amount of the administration expenses regardless of whether or not these expenses were paid out of the corpus of the estate or out of the income of the estate and irrespective on which return (estate or income) the administration expenses were claimed as deductions. The respondent also contends in his brief, and our findings of fact show, that the administration expenses were in fact paid out of the corpus of the estate and not out of the income of the estate. That is the interpretation which we have given to Exhibit 24–X and to the language used in paragraph 9 of the stipulation of facts; the pertinent part of paragraph 9 has been quoted above.

Both parties rely on the case of *Estate of Edward H. Luehrmann*, 33 T.C. 277 (1959), affd. 287 F. 2d 10 (C.A. 8, 1961). Respondent in essence, claims it is on all fours while petitioner cites it, pointing out that the Eighth Circuit affirmed the case because the taxpayer in that case had not proved that the administration expense payments involved were actually paid out of the income of the estate. Here, in the instant case, petitioner contends that it has proved that the

---

[1] SEC. 642. SPECIAL RULES FOR CREDITS AND DEDUCTIONS.

(g) DISALLOWANCE OF DOUBLE DEDUCTIONS.—Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction in computing the taxable income of the estate, unless there is filed, within the time and in the manner and form prescribed by the Secretary or his delegate, a state ment that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054. This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents).

SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

(1) for funeral expenses,

(2) for administration expenses,

(3) for claims against the estate, and

(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

administration expenses were actually paid out of the income of the estate and not out of corpus. Wherefore, petitioner contends that, according to the rationale of the opinion of the Eighth Circuit, the instant case should be decided for petitioner.

Inasmuch as the facts show in the stipulation, as we interpret them, that the administration expenses were paid out of the corpus of the estate and not out of the income, we think the issue must be decided in favor of respondent on the strength of *Estate of Edward H. Luehrmann, supra.* But even if we are mistaken in our interpretation of the facts as stipulated, to wit: that the administration expenses were actually paid out of the corpus of the estate and petitioner is correct in its contention that the administration expenses were paid out of the income of the estate, we would still decide the issue involved in favor of respondent.

We note that decedent specifically provided in his will that the income beneficiaries, including the principal life income beneficiary, decedent's sister, were to be paid income "effective immediately following my death." The estate tax consequences of this rule and provision in the will is that the income earned by the estate during administration was immediately payable to the life income beneficiaries under the trust and such income was not first subject to the expenses of the administration. This phase of the issue was also discussed by us in *Estate of Edward H. Luehrmann, supra,* where it was concluded that:

But even if they were paid out of income, the only possible assumption is that the payment was so made with the consent and approval of the income beneficiary who would, if she had insisted, have been entitled to the current income. This being so, any payment of the administration expenses out of money to which the life beneficiary was entitled would have constituted a contribution by her to the charity and not by the estate. *Estate of Herman Hohensee, Sr.,* 25 T.C. 1258. And her approval must be assumed since as we have seen, without it the local law would have required that the current income be paid to her without deduction for such expenses.

The local law of Texas, as we understand it, is not to the contrary. In the above-cited case the Tax Court found that the local law of Missouri was in accord with the weight of authority on this question. On appeal, the Eighth Circuit indicated that the question as to whether local law governed was not decisive. In the instant case, not only have we not found the local law to be contrary to the weight of authority but we find the decedent provided in his will for immediate payments of income to the life beneficiaries; consequently, in any event, the income of the estate during administration was payable to the life beneficiaries under the trust and it was not first subject to administration expenses. Administration expenses are payable out of corpus and not income as a matter of law where, as here, there is

no provision in the will regarding the payment of administration expenses.

For the foregoing reasons we decide the only issue involved in this proceeding in favor of respondent.

*Decision will be entered for the respondent.*