## Estate of Amelia S. Horne, Deceased, Andrew Berry, Executor, Petitioner v. Commissioner of Internal Revenue, Respondent

Docket No. 28700-85.          Filed July 25, 1988.

Andrew Berry, pro se.
*Stacey M. Eisenberg,* for the respondent.

PARKER, *Judge:* Respondent determined a deficiency of $19,075 in the Federal estate tax of the Estate of Amelia S. Horne, who died in 1981. The sole issue for decision is whether the charitable bequest deduction claimed by the Estate of Amelia S. Horne must be reduced by the amount of the executor's commissions that were paid out of post-mortem income and deducted on the estate's income tax returns. That requires a determination under the will and South Carolina law of what constitutes the residuary estate for which the charitable deduction is allowable.

### FINDINGS OF FACT

This case was submitted fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated

herein by this reference. In addition, certain oral stipulations were made in open court and are so found.

Amelia S. Horne, decedent, died testate on September 5, 1981. At the time of her death, decedent was a citizen and resident of Orangeburg County, South Carolina. Decedent's estate is being administered under the laws of South Carolina in the Probate Court for Orangeburg County, South Carolina. Petitioner is the Estate of Amelia S. Horne (the estate), acting by and through Andrew Berry, its duly appointed executor. Mr. Berry's legal residence was in Orangeburg, South Carolina, at the time the petition in this case was filed.

Decedent executed her last will and testament on January 7, 1976. Clause I of the will, regarding payment of decedent's debts and expenses, stated:

I. I HEREBY WILL AND DIRECT that all of my just debts, funeral expenses and expenses in connection with the administration of my estate be paid as soon as practicable after my death.

In the clauses that followed, and in a codicil executed June 9, 1981, decedent made specific bequests of cash and property to various individuals. These bequests had a total value as of the date of her death of $222,718.02. Decedent also bequeathed $5,000 to the Episcopal Church of the Redeemer of Orangeburg, South Carolina. With regard to the residue of her estate, Clause IX of the will provided that:

IX. ALL OF THE REST, RESIDUE AND REMAINDER of my Estate of whatsoever kind and wheresoever situate, I give, devise and bequeath unto the Dick Horne Foundation for charitable, educational and child benefit services.

The Dick Horne Foundation is an organization exempt from taxation under section 501(c)(3).[1]

The United States Estate Tax Return (Form 706) for the estate of Amelia S. Horne was timely filed on May 26, 1982. The total gross estate shown on the return was $1,486,016.84. Deductions claimed by the estate included $3,094 for funeral expenses, $1,491 for probate costs, $700

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect as of the date of the decedent's death, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.

for appraisal fees, and $13,308.95 for debts owed by decedent at the time of her death. No deduction was taken on the estate tax return for executor's commissions. The only other deduction claimed on the estate tax return was for decedent's bequests to charity. The charitable deduction claimed was $1,244,704.87, $5,000 of which was for the bequest to the Episcopal Church, and $1,239,704.87 of which was for the bequest of the residue of the estate to the Dick Horne Foundation. This residue amount was calculated by reducing the gross estate by the specific bequests, debts, funeral expenses, and administrative expenses (except for executor's commissions).

Instead of deducting executor's commissions on the estate tax return, the executor elected to deduct the commissions on the estate's income tax returns (Forms 1041). He did so by indicating the election on each of the estate's income tax returns. Executor's commissions in the amounts of $26,500, $15,000, $7,025, and $4,000 were deducted on the estate's income tax returns for the fiscal years ending on May 31 of 1982, 1983, 1984, and 1985, respectively. The executor's commissions were paid from income earned by the estate after decedent's date of death (post-mortem income).

In his notice of deficiency dated May 30, 1985, respondent determined that the charitable deduction claimed by the estate for the bequest of the residue to the Dick Horne Foundation should be reduced by $54,157.17, which was the amount of executor's commissions deducted by the estate on its income tax returns.[2] Accordingly, respondent increased petitioner's taxable estate by $54,157.17, resulting in a deficiency in the amount of $19,075. This lawsuit ensued.[3]

---

[2] As set out in the findings above, the executor's commissions deducted on the four estate income tax returns in evidence totaled $52,525. The difference between the amount of commissions deducted on these four returns in evidence and the amount of commissions asserted by respondent in the notice of deficiency ($54,157.17) is $1,632.17. Since the most recent of the four estate income tax returns (fiscal year ending May 31, 1985) is not designated as being the "final return" of the estate, we assume the $1,632.17 was deducted by the estate on a subsequent income tax return. Moreover, on brief both parties refer to the amount of executor's commissions in controversy as being $54,157.17. Therefore, so shall we.

[3] As a result of respondent's determination in the notice of deficiency, the South Carolina Tax Commission determined that there was a deficiency of $4,462.81 in petitioner's estate tax owed to the State of South Carolina. The basis for this deficiency determination by the South Carolina Tax Commission was the same as that asserted by respondent in his notice of deficiency in this case, that is, that the estate's charitable deduction be reduced by the

## OPINION

This case involves the $1,239,704.87 charitable deduction claimed by the estate for decedent's bequest of the residue of her estate to the Dick Horne Foundation, a qualified section 501(c)(3) organization. We must decide whether this claimed charitable deduction must be reduced by executor's commissions paid from income earned by the estate during its administration (post-mortem income) and deducted on the estate's income tax returns. Petitioner contends no such reduction of its charitable deduction is warranted in this case. Broadly speaking, we must determine, under decedent's will and South Carolina law, the amount of the residuary estate bequested to the charity for which a charitable deduction is allowable for Federal estate tax purposes.

Section 2001(a) imposes an estate tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States.[4] To arrive at the taxable estate, it is necessary first to determine the gross estate. The gross estate is determined by including the value at the time of death of all decedent's property, real or personal, tangible or intangible, wherever situated.[5] Sec. 2031(a). A decedent's taxable estate is then determined by deducting from the value of the gross estate the deductions provided for in sections 2053 through 2056. Sec. 2051. Income received by an estate during its administration (post-mortem income) is not included in the gross estate for estate tax purposes. *Bowes v. United States*, 593 F.2d 272, 275 (7th Cir. 1979). Instead, post mortem income is includable in the estate's gross income for income tax purposes. See sec. 641(a)(3). Expenses incurred in adminis-

---

$54,157.17 of executor's commissions. That case was heard on motions for summary judgment in the Court of Common Pleas (Case No. 85-CP-38-487) for the State of South Carolina, County of Orangeburg, on July 28, 1986. In an unreported decision dated Aug. 12, 1986, judgment was rendered in favor of the plaintiff, the Estate of Amelia S. Horne. The court based its decision, as will be discussed in greater detail below, on a strict construction of the South Carolina statute defining "taxable estate" focusing only on "deductions allowed for Federal estate tax purposes" for executor's commissions.

[4] South Carolina also imposes an estate tax on the transfer of the taxable estate of its citizens. See sec. 12-15-10 of the Code of Laws of South Carolina Annotated (1976) (S.C. Code Ann.), as it read in 1981.

[5] The gross estate for Federal tax purposes is used by South Carolina as the gross estate for South Carolina estate tax purposes. See sec. 12-15-40 of the Code of Laws of South Carolina Annotated (1976) as it read in 1981.

tering an estate, including executor's commissions, are deductible from the gross estate under section 2053(a).[6] See sec. 20.2053-3(a), Estate Tax Regs. Under section 642(g),[7] an election can be made to deduct these administration expenses on the estate's income tax return instead of on the estate tax return. The election is made by filing a statement with the Internal Revenue Service that the expenses have not been allowed as deductions under section 2053 or 2054 and that the right to have such amounts allowed at any time as deductions under section 2053 or 2054 is thereby waived. Sec. 642(g); see sec. 1.642(g)-1, Income Tax Regs. Petitioner elected to deduct the $54,157.17 of executor's commissions in issue on the estate's income tax returns and properly waived the right to deduct such amounts on the estate tax return.

In general, section 2055 allows an estate a deduction for the amount of all bequests to charity to the extent that the transferred property is required to be included in the gross estate.[8] The estate is entitled to deduct only the amount

---

[6]Sec. 2053(a) provides:

SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    (1) for funeral expenses,

    (2) for administration expenses,

    (3) for claims against the estate, and

    (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

[7]Sec. 642(g) provides:

(g) DISALLOWANCE OF DOUBLE DEDUCTIONS.—Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction (or as an offset against the sales price of property in determining gain or loss) in computing the taxable income of the estate or of any other person, unless there is filed, within the time and in the manner and form prescribed by the Secretary, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054. This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents).

[8]Sec. 2055, in pertinent part, reads as follows:

SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.

(a) IN GENERAL.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers—

    \*      \*      \*      \*      \*      \*      \*

actually passing to the charitable beneficiary. *Harrison v. Northern Trust Co.,* 317 U.S. 476, 480 (1943).

In the present case, the parties agree that decedent's gross estate was $1,486,016.84 and that decedent's bequest of the residue of her estate to the Dick Horne Foundation entitled the estate to a deduction under section 2055. The parties disagree as to what constitutes the amount of the residue that qualifies for the deduction. Petitioner bears the burden of showing its right to a claimed deduction. *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593 (1943).

It is clear that while the Federal estate tax is imposed against the estate as a whole, the devolution of property in the estate and, thus, the amount of the residue remaining and qualifying for the charitable deduction in this case is a question of State law. *Riggs v. Del Drago,* 317 U.S. 95 (1942); *Harris v. United States,* 370 F.2d 887, 893 (4th Cir. 1966); *Estate of Short v. Commissioner,* 68 T.C. 184, 190 (1977). In this regard, petitioner argues that its position is supported by the relevant South Carolina law. Initially, petitioner points to the judgment of the South Carolina Court of Common Pleas, which sustained petitioner's position, as being controlling in this case. See note 3 *supra.* We note at the outset that we are not bound by the judgment of the South Carolina Court of Common Pleas as that court is not the Supreme Court of South Carolina. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967); *Estate of Harmon v. Commissioner,* 84 T.C. 329, 333 (1985). However, we have carefully considered the decision of the South Carolina Court of Common Pleas, and for the reasons discussed below do not find it persuasive.

---

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office;

     \*     \*     \*     \*     \*     \*     \*

(d) LIMITATION ON DEDUCTION.—The amount of the deduction under this section for any transfer shall not exceed the value of the transferred property required to be included in the gross estate.

Section 12-15-60 of the Code of Laws of South Carolina Annotated (1976) (S.C. Code Ann.), in pertinent part, provides the method of determining the value of a taxable estate. The statute read as follows at the time of the decedent's death:

Sec. 12-15-60. Method of determining value of taxable estate.

For purposes of the tax imposed by sec. 12-15-10, the value of the taxable estate shall be determined by deduction from the value of the gross estate the exemptions and deductions allowed for Federal estate tax purposes pursuant to secs. 2051 and 2053 through 2056, inclusive, of the Internal Revenue Code of 1954, as amended through December 31, 1975; *provided*, that for the determination of deductions for South Carolina Estate Tax purposes, the marital deduction shall not exceed the greater of two hundred and fifty thousand dollars, or fifty percent of the value of the adjusted gross estate, as defined in paragraph (2) of Section 2056(c) of the Internal Revenue Code of 1954, as amended through December 31, 1975.[9]

The first clause of S.C. Code Ann. section 12-15-60 is substantially similar to Internal Revenue Code section 2051 in that for the purpose of computing the South Carolina estate tax, the taxable estate is determined by deducting from the gross estate the deductions allowed for Federal estate tax purposes under sections 2053 through 2056. The South Carolina Court of Common Pleas focused on this portion of the statute in rendering its judgment for the petitioner-estate here. That court found that as a result of the election under section 642(g), the estate had waived its right to have the executor's commissions allowed at any time as deductions under section 2053 or 2054.[10] That court concluded that the taxable estate should not be increased by deducting $54,157.17 of executor's commissions that under the statute could not be allowed at any time as deductions in determining the taxable estate. Petitioner makes the same argument on brief in this Court.

We think the State court's judgment in favor of petitioner did not focus on the specific issue in controversy. The issue

---

[9]S.C. Code Ann. sec. 12-15-60 has since been repealed by 1987 S.C. Act No. 70, sec. 9, effective with respect to decedents dying after June 30, 1991. See new S.C. Code Ann. secs. 12-16-10 through 12-16-2000, entitled "South Carolina Estate Tax Act," for decedents dying after June 30, 1991.

[10]Sec. 2054 generally allows deductions for losses incurred from theft, fires, or other casualties, and is not applicable in the present case.

is not whether the executor's commissions should be allowed as deductions under section 2053. We agree with the State court that by making the election under section 642(g) the executor's commissions are not allowable deductions under section 2053. See note 7 *supra.* The issue here, however, is the proper amount of the estate's charitable deduction under section 2055, and whether in determining the residue qualifying for the charitable deduction the gross estate must be reduced for executor's commissions paid from income earned by the estate during its administration. Again, we point out that the deduction is limited to the amount of the residue actually received by the charity that *also* was required to be included in the gross estate.

The parties have not cited, and we have not found, any South Carolina cases involving the issue in controversy here. However, we think the Fifth Circuit's opinion in *Alston v. United States,* 349 F.2d 87 (5th Cir. 1965), is directly on point. The facts in *Alston* are almost identical to those in the present case. In *Alston* the decedent, by his will, after certain specific bequests to nieces and nephews, left the residue of his estate to a duly qualified charitable foundation. The estate's executors elected to deduct certain expenses of administration on the estate's income tax return. The amount claimed as a charitable deduction on the estate tax return was not reduced by these administration expenses deducted on the income tax return. The Commissioner asserted an estate tax deficiency based on the failure to deduct these administration expenses from the gross estate in computing the residue.

The Fifth Circuit looked to Georgia law, which provided that unless otherwise directed by the will, the debts of the testator (including expenses of administration) should be paid out of the residue of the estate. *Alston v. United States, supra,* 349 F.2d at 89.[11] The taxpayers argued that if the administration expenses are paid out of post-mortem income rather than the estate's corpus, the residue passing to charity is not decreased by the expenses so paid. 349 F.2d at 89. In support of this argument, the taxpayers cited two cases, *Estate of Luehrmann v. Commissioner,* 287 F.2d 10 (8th Cir. 1961), affg. 33 T.C. 277 (1959), and *Republic*

---

[11]The Fifth Circuit cited Georgia Code Annotated section 113-821.

*National Bank of Dallas v. Commissioner,* 334 F.2d 348 (5th Cir. 1964), affg. 39 T.C. 85 (1962). However, the court in *Alston* found that in neither of these cases was this question reached, since in each case the court found no proof that the administration expenses in issue had in fact been paid from income. 349 F.2d at 89. Moreover, the Fifth Circuit went on to state that:

No amount of legalistic legerdemain can produce from these cases "the principle that where expenses of administration are paid out of post-mortem income, the amount of corpus available for charity is not diminished by such payments * * * " as argued by the executors. [349 F.2d at 89.]

In holding for the Commissioner, the court based its decision on the clear language of the Georgia statute cited above and related Georgia decisions. 349 F.2d at 90. Since the will in *Alston* did not specify the source from which the testator's debts and expenses must be met, the court held that under the statute the administration expenses were pre-residue expenses. 349 F.2d at 89. The court also stated that "the effect of yielding to the executors' argument here would be to increase the amount of the gross estate by the amount of post-mortem income—a result directly contrary to the statutory definition of gross estate." 349 F.2d at 89.

South Carolina has a statute substantially similar to the Georgia statute relied on in *Alston.* S.C. Code Ann. section 21-35-190 provides as follows:

Sec. 21-35-190. Expenses incurred in settlement of decedent's estate shall be charged against principal.

Unless the will otherwise provides and subject to Sec. 21-35-80 [not applicable here], all expenses incurred in connection with the settlement of a decedent's estate, including debts, funeral expenses, estate taxes, interest and penalties concerning taxes, family allowances, fees of attorneys and personal representatives, and court costs shall be charged against the principal of the estate.

There is no provision in decedent's will contrary to the terms of S.C. Code Ann. section 21-35-190. With regard to expenses of administration, decedent's will provided only that they be paid as soon as practicable after her death. Therefore, under the statute, the executor's commissions in issue are to be charged against the principal of the estate. We think this reduces the amount of the residue to be

received by the charity. However, petitioner attempts to draw a distinction between the effect of this statute and the Georgia statute relied on in *Alston.* Petitioner argues that the Georgia statute requires payment of the administration expenses from the residue, while the South Carolina statute provides no direction as to the source of payment. We draw no such distinction.

Generally, the residue of an estate is defined as that which remains after the payment of charges, debts, and bequests. Ballentine's Law Dictionary 1103, 1104 (3d ed. 1969). This definition has been utilized by the Supreme Court of South Carolina. *Dabney v. Estes,* 262 S.C. 336, 204 S.E.2d 387, 389 (1974). Thus, we conclude that executor's commissions charged against the principal of an estate under S.C. Code Ann. section 21-35-190 reduce the amount of the estate's residue. In the present case, this results in a reduction of the amount to be received by the charitable beneficiary under decedent's will. Therefore, we hold that the estate's charitable deduction must also be reduced by the amount of the commissions. *Harrison v. Northern Trust Co., supra,* 317 U.S. at 480.

We further note that our holding is not changed by the fact that the executor's commissions were actually paid from post-mortem income rather than from the principal of the estate. This does not change their nature as pre-residue expenses. To hold otherwise would be "to increase the amount of the gross estate by the amount of post-mortem income—a result directly contrary to the statutory definition of gross estate." *Alston v. United States, supra,* 349 F.2d at 89.

As additional support for our holding in this case, we note a portion of the legislative history to the section 2056 marital deduction. Speaking on the problem encountered in valuing the residue passing to a surviving spouse for purposes of the marital deduction, the Committee on Finance stated:

The interest passing to the surviving spouse from the decedent is only such interest as the decedent can give. If the decedent by his will leaves the residue of his estate to the surviving spouse and she pays, *or if the estate income is used to pay,* claims against the estate so as to increase the residue, *such increase in the residue is acquired by purchase and not*

*by bequest. Accordingly, the value of any such additional part of the residue passing to the surviving spouse cannot be included in the amount of the marital deduction.* [S. Rept. 1013, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 285, 335. Emphasis supplied.]

We think this portion of the legislative history to the marital deduction applies with equal force to the estate tax charitable deduction for the bequest of the residue to a charity. As such, the quoted portion supports our holding by stating that the increase in the amount of the residue passing to charity as a result of the use of estate post-mortem income to pay administration expenses cannot be included in the charitable deduction. Thus, respondent's determination that the estate's charitable deduction be reduced for executor's commissions paid from estate income is sustained.

To reflect the foregoing,

*Decision will be entered under Rule 155.*