ESTATE OF OTIS C. HUBERT, DECEASED, C&S/SOVRAN TRUST COMPANY (GEORGIA), N.A., A NATIONAL BANKING ASSOCIATION, CO-EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 22333–90.          Filed October 19, 1993.

*David W. Aughtry, David W. Seigel,* and *James M. McCarten,* for petitioner.
*Willard N. Timm, Jr.,* for respondent.

OPINION

CLAPP, *Judge:* Respondent determined a deficiency in petitioner's estate tax in the amount of $14,052,146. After concession by the parties, the remaining issues for decision

are: (1) Whether the amounts of petitioner's marital and charitable deductions are limited to the amounts passing to the marital and charitable shares under the 1982 will and three codicils, or are the amounts actually passing under a settlement agreement to the marital and charitable shares as reduced by obligations charged to the respective shares; (2) whether the amounts of the marital and charitable deductions must be reduced by administration expenses paid from the marital and charitable portions [1] under the settlement agreement, without regard to whether the estate allocated those expenses to income; and (3) whether the marital and charitable portions must be discounted by 7 percent per annum to take into account income deemed to be earned by the residue.[2]

This case was submitted fully stipulated under Rule 122. We incorporate by reference the stipulation of facts and attached exhibits. All section references are to the Internal Revenue Code as in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner is the Estate of Otis C. Hubert (decedent). Decedent was a resident of Marietta, Georgia, when he died on June 2, 1986. C&S/Sovran Trust Co. (C&S) is the coexecutor of decedent's estate. On the date the petition was filed, C&S had its principal place of business in Atlanta, Georgia.

At the time of his death, decedent was married to Ruth S. Hubert (Mrs. Hubert). The Huberts had four children: Richard N. Hubert, Marilyn Hubert Kemper, Judith Hubert Manning, and Deborah Hubert Jones.

In January 1982, decedent executed the last will to be signed prior to his death (the 1982 will). That will superseded his previous will, which had been executed in 1977.

---

[1] We are using the terms "marital portion" and "charitable portion" to mean the amounts received by the spouse and the charity, respectively, under the settlement agreement. Pursuant to the settlement agreement, the marital and charitable portions include income accumulated to the date of distribution. The terms "marital portion" and "charitable portion" should not be confused with the terms "marital share" and "charitable share" or "marital deduction" and "charitable deduction".

[2] The Court has severed, for decision in a separate opinion, *Estate of Hubert v. Commissioner*, T.C. Memo. 1993-482, the issue of whether bequests in the amount of $100,000 each to two subtrusts providing for the support of the missionary work of charitable organizations through two named individuals and for the establishment of foreign mission field medical clinics qualify for a charitable deduction.

The 1982 will was modified three times by codicils executed between February 4, 1982, and June 8, 1983. Decedent's nephew, Robert H. Owen (Owen), drafted the will and the three codicils.

In addition to certain specific bequests, the 1977 will left, in trust, an amount equal to the maximum marital deduction; however, if the estate tax due from the estate (before application of any credits) were less than any credits available to the estate, the marital bequest was to be reduced to that amount which would cause the estate tax owed by decedent's estate (before application of any credits) to equal the total of all credits finally allowed. Decedent's intent was to fully utilize all credits and deductions. The income from the trust was payable to Mrs. Hubert for her life, with the remainder to charity. Mrs. Hubert had a general power of appointment over the trust. The 1977 will also established a charitable remainder unitrust from the residue of the estate. The trustee had the discretion to distribute 5 percent of the net assets of the charitable trust annually to Mrs. Hubert or any of the Hubert children. Upon the death of Mrs. Hubert, the charitable trust terminated, and the remainder was to be distributed outright to charity.

The 1982 will left the residue of decedent's estate in trust, the income of which was to be paid to Mrs. Hubert, with the remainder to charity. Mrs. Hubert had a general power of appointment. The second codicil to the 1982 will eliminated Mrs. Hubert's general power of appointment.

Upon decedent's death, will contests were filed by various members of the Hubert family, including Mrs. Hubert. The will contest instituted by Mrs. Hubert requested the probate court to strike the second codicil to the 1982 will or, in the alternative, to strike the 1982 will and all the codicils, because of alleged undue influence by Owen in favor of the charitable remainder beneficiaries. In June 1987, the Hubert family, Owen, and the district attorney for Cobb County, Georgia, where the will was being probated, entered into an "Agreement of Interested Parties" (the first agreement), which purported to resolve all of the differences among the competing interests under the will.

The Georgia revenue commissioner challenged the first agreement alleging that he was a necessary party to ensure that the charitable beneficiaries were treated fairly. As a

result of negotiations, which included the Georgia revenue commissioner and the Georgia attorney general as representatives for the charities, the first agreement was supplanted by the "Second and Final Settlement Agreement" (settlement agreement) on October 10, 1990, which was approved by the Superior Court of Cobb County in an order, judgment, and decree. The Cobb County Probate Court entered a final order adopting the order, judgment, and decree as binding in its proceedings on November 28, 1990.

The settlement agreement amended the 1982 will and codicils by deleting item VIII, which disposed of the residuary estate, and all codicil provisions related to that item. In lieu thereof, the settlement agreement added various provisions, including provisions for the division of the residuary estate between the marital and charitable portions and for the allocation of expenses between the marital and charitable portions. Under the settlement agreement, Mrs. Hubert was named beneficiary of a part of the residue in two trusts: The marital trust, over which she had a general power of appointment, and the QTIP trust. The charity received the rest of the residue outright.

Based on the first agreement, an estate tax return, Form 706, was filed on September 2, 1987. Respondent issued a notice of deficiency on August 31, 1990, disallowing $12,650,592 of the marital deduction and $12,502,655 of the charitable deduction, as well as making adjustments to the deduction for debts of the decedent and to the amount of adjusted taxable bequests.

*Limitations on Deductions Based on the 1982 Will and Codicils*

The first issue for decision is whether the marital and charitable deductions are limited by the amounts Mrs. Hubert and the charity would have taken under the 1982 will and codicils.

*Marital Deduction*

Section 2056(a) provides in pertinent part:

For purposes of the tax imposed by section 2001, the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

In defining whether an interest in property has "passed from the decedent to his surviving spouse" in the context of a will contest, section 20.2056(e)-2(d)(2), Estate Tax Regs., states:

If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.

Respondent argues that petitioner's marital deduction is limited to the lesser of the amount distributed to Mrs. Hubert under the settlement agreement or the amount that would have been so distributed under the 1982 will and codicils. Presumably, respondent's contention is that Mrs. Hubert did not have an enforceable right in decedent's estate to any amount in excess of what she would have received under the 1982 will and codicils.

Petitioner argues that "(i) a good faith compromise of (ii) a *bona fide* will dispute, (iii) involving uncontested provisions of state law, is absolutely dispositive of the question of enforceable rights." Petitioner contends that, although a settlement agreement cannot definitively determine questions of law, it can conclusively resolve questions of fact. Petitioner concludes that, since the State law in this case is

clear and the dispute is inherently factual, the settlement agreement should control.

In deciding whether a settlement agreement is a "bona fide recognition of enforceable rights of the surviving spouse in decedent's estate", this Court has looked to whether the agreement was made in good faith as the result of arm's-length negotiations. *Estate of Barrett v. Commissioner,* 22 T.C. 606, 611 (1954).

However, in *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967), the Supreme Court held that a Federal court deciding the estate tax consequences of an attempted disclaimer was not bound by the State trial court's adjudication of the property rights involved. Citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938), the Court noted that "state law as announced by the highest court of the State is to be followed." *Commissioner v. Estate of Bosch, supra* at 465. Moreover, the Court explained that the State's intermediate appellate court decisions should be considered in deciding State law unless the Federal court is convinced that the highest court of the State would rule otherwise. Therefore, the Court concluded that a Federal court may not always be bound by the decision of the intermediate appellate court and that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should a fortiori not be controlling." *Id.* Finally, the Court explained:

the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving *"proper regard* to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. [*Id.;* emphasis added; citation omitted.]

In light of the Supreme Court's decision in *Estate of Bosch,* courts have concluded that if the decision of a State trial court on a matter of State law is not binding for estate tax purposes, a good faith settlement of such an issue cannot be either. *Ahmanson Found. v. United States,* 674 F.2d 761, 774 (9th Cir. 1981). We agree. In deciding whether the surviving spouse has enforceable rights in a decedent's estate, courts must look behind any settlement agreement to ensure that the claim on which it is based is valid. *Estate of Brandon v.*

*Commissioner,* 828 F.2d 493, 499 (8th Cir. 1987), revg. and remanding 86 T.C. 327 (1986).

While we agree that we are not bound by the settlement agreement for our decision of Mrs. Hubert's enforceable rights, we conclude that the agreement should not be ignored here. We have looked at the adversarial or nonadversarial nature of the proceedings in the State courts to determine the weight to be given such settlement agreements. See *Estate of Sawyer v. Commissioner,* 73 T.C. 1 (1979) (Tax Court followed the decision of the Court of Appeals of Ohio because the decision was the result of a bona fide adversary proceeding, and the Court could not conclude that the Supreme Court of Ohio would not follow the lower court decision); *Harrah v. Commissioner,* 70 T.C. 735, 754 (1978) (Tax Court followed the characterization of property in a settlement agreement approved by a Nevada divorce court because the Court believed "the Nevada Supreme Court would have approved the action taken by the divorce court had it been called upon to review it", emphasizing the adversarial nature of the settlement); *Estate of Rowan v. Commissioner,* 54 T.C. 633 (1970) (Tax Court disregarded the determination of property ownership made by the Superior Court of California where it was not the result of bona fide adversary litigation and made an independent determination of the facts and law).

The parties have stipulated that the settlement agreement was the result of a bona fide adversary proceeding. Under the settlement agreement, Mrs. Hubert received in value more than half of what she would have received if she had succeeded in having the second codicil declared invalid as the product of undue influence and substantially all of what she would have received if she had succeeded in having the 1982 will and codicils declared invalid as the products of undue influence. Moreover, this was a settlement among adverse parties with significant interests to protect in the litigation, including the Georgia attorney general and the Georgia revenue commissioner, whose right to participate in the litigation was litigated all the way to the Supreme Court of Georgia. The settlement agreement also was approved by the Superior Court of Cobb County. Under Georgia law a settlement agreement sustaining a will challenge can be approved by the superior court only "after a hearing, notice of which shall

be given as the court shall direct, at which evidence is introduced and at which the judge finds as a matter of fact that the caveat is meritorious." Ga. Code Ann. sec. 53-3-22(a) (Michie 1982).

In addition, this is not a circumstance in which respondent's interests were hurt by the compromise reached by the parties. If the probate of the estate had proceeded without challenge, and the estate tax return had been filed based on the 1982 will and codicils, Mrs. Hubert would have been entitled to an income interest for life, payable at least annually, in the entire residue of the estate. Therefore, petitioner could have made a QTIP election and been entitled to a deduction for the entire residue. We note that respondent has conceded that the second settlement agreement modified the 1982 will and codicil so that section 2056(b)(7)(B)(i)(III) does not bar the marital deduction. Since the estate would have been entitled to a full deduction for the residue under the 1982 will and codicils, there is no way that the parties could have acted in a manner contrary to respondent's interests.[3]

Taking all of the circumstances surrounding the settlement agreement into consideration, we are convinced that what Mrs. Hubert received under the settlement agreement is in satisfaction of enforceable rights in decedent's estate. Although the regulations state that the settlement agreement will not *necessarily* be accepted as a bona fide evaluation of such rights, they do not require rejection of such settlement agreement. In this instance we think it is appropriate to recognize the amounts passing to Mrs. Hubert under the settlement agreement as passing from decedent, especially in the absence of any suggestion that the settlement agreement was entered into for post mortem tax planning purposes.

---

[3] We note that the additional tax that would arise if respondent prevailed on this argument is the result of the inconsistent treatment given to settlement agreements in the regulations. If Mrs. Hubert did not have an enforceable right to all of what she received under the settlement agreement, petitioner would be entitled to deduct only the amount she would have received under the 1982 will and codicils. The rationale for the result is that any amount to which she did not have an enforceable right did not pass to her from decedent, but was given to her by the charity in exchange for dropping her challenge. However, under the regulations, petitioner is not entitled to a charitable deduction for the amount the charity gave up in the settlement, presumably because if the charity never actually received the property before giving it up, it was not a bequest, legacy, devise, or transfer to or for the use of a charitable organization. Consequently, if Mrs. Hubert did not have an enforceable right to all of the amount she received under the settlement, a portion of the residue which was left entirely to either Mrs. Hubert or the charity would be treated as having passed to neither of them.

Therefore, we hold that the marital deduction is not limited by the amount Mrs. Hubert would have taken under the 1982 will as amended by the second codicil.

### Charitable Deduction

Respondent argues that the charitable deduction also is limited to the lesser of the amount the charity would have received under the 1982 will and codicils or the amount it actually received under the settlement agreement. Petitioner argues that the charitable deduction is equal to the amount the charity actually received provided the settlement was not collusive. We note that the parties appropriately agree that "the Second Settlement Agreement modified the 1982 Will and three Codicils so that the split interest provisions under I.R.C. section 2055(e) [do] not bar a deduction for the charitable gift". See *Flanagan v. United States,* 810 F.2d 930 (10th Cir. 1987); *First Natl. Bank v. United States,* 727 F.2d 741 (8th Cir. 1984); *Estate of Strock v. United States,* 655 F. Supp. 1334 (W.D. Pa. 1987); *Northern Trust Co. v. United States,* 41 AFTR 2d 78-1523, 78-1 USTC par. 13,229 (N.D. Ill. 1977); Rev. Rul. 89-31, 1989-1 C.B. 277. Therefore, the parties agree that petitioner is entitled to some amount of charitable deduction. Moreover, since the charity will receive less under the settlement agreement than it would have received under the will, respondent and petitioner are in agreement that the settlement agreement controls the amount of the charitable deduction.

### Allocation of Expenses

The second issue for decision is whether the marital and charitable deductions must be reduced by expenses allocated to income of the estate.

The 1982 will gave the executors of decedent's estate the power "to charge any expenses against income or principal or apportion the same". The executors allocated $506,989 as funeral and administration expenses to the principal of the estate. All other administration expenses were allocated to income.

Respondent argues that the amount of a marital or charitable deduction must be reduced by the entire amount of administration expenses, whether those expenses are allo-

cated to principal or to income. Respondent cites section 20.2056(b)-4(a), Estate Tax Regs., and the legislative history of section 2056 as support for the proposition. In addition, respondent argues that the courts have "uniformly recognized" that administration expenses reduce the marital and charitable deductions regardless of whether those expenses are paid out of income or principal. Respondent contends that both Georgia law and the language of the settlement agreement also mandate such a result. We disagree.

Before considering this issue in detail, it is helpful to consider an overview of the operation of estate accounting and estate taxes. The starting point for determining Federal estate taxes is the date-of-death (or alternate valuation date) value of the property of the estate. Deductions are allowed for various expenses of the estate, as well as for claims against the estate and bequests to the decedent's spouse and to charity. Income earned by the estate has no effect on the estate for Federal estate tax purposes. It is accounted for separately in the estate's probate account and is taxed separately on the estate's Forms 1041.

Executors have been granted significant flexibility in accounting for the estate's administration expenses, both for estate and income tax purposes, and for probate accounting purposes. Congress has granted the executor the option of deducting administration expenses on either the estate return, Form 706, or the fiduciary income tax return, Form 1041. Sec. 642(g). In addition, many States give the decedent the option of authorizing the executor to allocate such expenses to principal or to income at the executor's discretion. If the administration expenses were paid out of principal, they would reduce the amount of such principal received by the beneficiaries and would reduce the marital and charitable deductions. However, we conclude that the administration expenses that are allocable to income in this case do not change the amount of the estate principal received by the spouse or the charity and do not reduce the marital and charitable deductions. Administration expenses are incurred and accrue during administration and should not be confused with claims against the estate that existed and accrued at the date of death.

Our conclusion that the marital and charitable deductions are not reduced by payment of administration expenses allo-

cated to income does not lead to a double deduction in violation of section 642(g). Section 642(g) prohibits a deduction under section 2053 or 2054 for any administration expenses deducted on the estate's income tax return. However, section 642(g) does not prohibit or reduce deductions under section 2055 or 2056. The deductions under sections 2055 and 2056 are based on the date-of-death value of the property received by the charity and the spouse from the gross estate. The executor's ability to preserve the value of the marital and charitable bequests by allocating administration expenses to income is in no way barred by section 642(g).

The allocation of the expenses in the case before us is governed by Georgia law. Georgia law authorizes allocation of expenses to income rather than principal, if provided in the will. Ga. Code Ann. secs. 53-2-101, 53-15-3 (Michie 1982). The 1982 will authorized such an allocation, and this provision was not affected by the settlement agreement. To the extent the executor exercised its discretion and allocated administration expenses to income, the marital and charitable deductions are not reduced by payment of those expenses.

Respondent argues that section 20.2056(b)-4(a), Estate Tax Regs., controls this question. That section states, in relevant part:

Marital deduction; valuation of interest passing to surviving spouse.—(a) *In general.* * * * The marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse, the same principles being applicable as if the amount of a gift to the spouse were being determined. *In determining the value of the interest in property passing to the spouse* account must be taken of the effect of any material limitations upon her right to income from the property. An example of a case in which this rule may be applied is a bequest of property in trust for the benefit of the decedent's spouse but the income from the property from the date of the decedent's death until distribution of the property to the trustee is to be used to pay expenses incurred in the administration of the estate. [Emphasis added.]

We do not interpret section 20.2056(b)-4(a), Estate Tax Regs., as mandating a setoff against the marital deduction for administration expenses allocable to income. That section is merely a valuation provision which requires material limitations on the right to receive income to be taken into account when valuing the property interest passing to the surviving

spouse. The fact that income from property is to be used to pay expenses during the administration of the estate is not necessarily a material limitation on the right to receive income that would have a significant effect on the date-of-death value of the property of the estate.

On the facts before us, we find that the trustee's discretion to pay administration expenses out of income is not a material limitation on the right to receive income. Under section 2056(b)(4) and section 20.2056(b)-4(a), Estate Tax Regs., the value of the interest passing to the spouse and the effect of any encumbrance on that interest shall be determined "as if the amount of a gift to the spouse were being determined." Therefore, we look to the gift tax provisions and consider how they treat the payment of expenses out of the income of a trust that was given to a spouse. Under section 2523(e), in order for a donor to be entitled to a deduction for a gift in trust to his spouse over which the spouse has a general power of appointment, the spouse must be entitled to all of the income from the trust. Under section 25.2523(e)-1(f)(3), Gift Tax Regs., a spouse is considered to receive all of the income from a trust even if "trustees' commissions, and other charges" are paid out of income, provided the spouse is not deprived of substantial beneficial enjoyment. That section is similar to section 20.2056(b)-(5)(f)(3), Estate Tax Regs. In interpreting those sections, respondent has considered the effect of a power "To charge to income or principal, executor's or trustee's commissions, legal and accounting fees, custodian fees, and similar administration expenses" on the marital deduction. Respondent concluded that such a power "does not result in the disallowance or *diminution* of the marital deduction." Rev. Rul. 69-56, 1969-1 C.B. 224 (emphasis added). While we recognize that the revenue ruling is not binding precedent, it does present respondent's position on this subject. *Crow v. Commissioner,* 85 T.C. 376, 389 (1985).

In the case before us, the power is essentially the same as the power in the revenue ruling. Moreover, the income used to pay administration expenses is insubstantial compared to the lifetime of income Mrs. Hubert will receive from the property. Therefore, she is not deprived of substantial beneficial enjoyment, and she would be treated, under section 25.2523(e)-1(f)(3), Gift Tax Regs., as having received all of the income from the trust. If Mrs. Hubert is treated as hav-

ing received all of the income from the trust, there can be no material limitation on her right to receive income.

We also reject respondent's interpretation of the legislative history of the marital deduction, which states that *claims* against the estate paid out of income increase the residue by purchase, not bequest, and therefore "the value of any such additional part of the residue passing to the surviving spouse can not be included in the amount of the marital deduction." S. Rept. 1013 (Part II), 80th Cong., 2d Sess. (1948), 1948-1 C.B. 331, 335. The Senate report describes the result only if income is used to pay *claims against the estate;* it does not discuss administration expenses at any point. There is a clear distinction between claims against the estate and administration expenses which are allocable to income, and this distinction mandates different treatment of the two. Claims against the estate are, by definition, in existence at the date of death; therefore, by their very nature, claims against the estate relate to corpus and must be charged thereto. By contrast, administration expenses come into existence only after the death of the decedent and may relate to both income and corpus. As a result, administration expenses logically can be charged to either income or corpus. Here they were charged to income in accordance with the will and Georgia law. Accordingly, the legislative history cited by respondent does not control the treatment of administration expenses in the case before us.

This Court has spoken on this issue in *Estate of Richardson v. Commissioner,* 89 T.C. 1193 (1987), and *Estate of Street v. Commissioner,* T.C. Memo. 1988-553, affd. in part, revd. in part and remanded 974 F.2d 723 (6th Cir. 1992). In *Estate of Richardson,* the decedent left to his wife the amount of his residuary estate necessary to maximize all of his estate tax deductions in order to make his estate non-taxable for Federal estate tax purposes. The decedent's executors were given the power to allocate expenses between income and principal. Respondent argued that the marital deduction should be reduced by the amount of interest payable on the estate's Federal estate taxes and State inheritance taxes, even though the executors had allocated the interest to income.

We concluded: "Whether an expenditure on behalf of an estate is chargeable to principal, or the income produced

thereby, depends on the law of the State wherein decedent was a resident at the time of his death, or upon the terms of decedent's will." *Estate of Richardson v. Commissioner, supra* at 1201. In that case, there were no provisions of State law dictating where the interest should be charged. Therefore, we looked to the language of the will and determined that, based on the decedent's intent to minimize taxes, the executors had the power to charge the interest against income and, thereby, not reduce the marital deduction.

In *Estate of Street,* on similar facts we held that Tennessee law permitted a decedent to grant the power to allocate administration expenses between income and principal. We held that the marital deduction was not reduced by the amount of the expenses allocated to income.

We note that the fact that the marital bequest in *Estate of Street* was in trust did not affect our reasoning in that case. Respondent argues that the fact of the trust should make a difference, because if Mrs. Hubert is receiving only an income interest and part of the income is used to pay expenses, the value of the interest passing to Mrs. Hubert is reduced. However, respondent ignores the fact that, because Mrs. Hubert has a general power of appointment over one of the trusts and the other trust is a qualified terminable interest trust, Mrs. Hubert is treated as having received the entire value of both trusts, not just the income portions.

On appeal, the Court of Appeals for the Sixth Circuit reversed our holding in *Estate of Street* with regard to administration expenses, concluding that payment of such expenses reduces the marital deduction whether the payment is allocated to income or to principal. However, the court upheld our holding that the payment of interest on estate taxes and inheritance taxes allocated to income does not reduce the marital deduction. *Estate of Street v. Commissioner,* 974 F.2d 723 (6th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1988-553.[4]

On the issue of the administration expenses, the Court of Appeals determined that section 20.2056(b)-4(a), Estate Tax

---

[4] Respondent has now accepted the holding that the payment of interest on estate and inheritance taxes allocated to income does not reduce the marital deduction. Rev. Rul. 93-48, 1993-25 I.R.B. 9. Respondent has specifically limited her change in position to payments of interest and has reaffirmed her position regarding all other administration expenses. As we explain below, we see no valid distinction between interest and other administration expenses.

Regs., was controlling. The Court of Appeals concluded that the regulation mandates a setoff against the marital deduction for administration expenses paid from income. The court reasoned:

Income earned by the estate during * * * [the administration] period builds up the marital share. Expenses paid from income during this period have the effect of decreasing the amount of estate property distributable to the spouse. Therefore, the payment of administrative expenses from income must operate to reduce the size of the marital deduction, otherwise the spouse would receive a deduction which exceeded the amount which was actually in the estate, and available for distribution. * * * [*Id.* at 727.]

The court found support for this reasoning in the legislative history of the marital deduction.

The Court of Appeals distinguished administration expenses from interest on estate and inheritance taxes on two grounds. First, citing *Estate of Richardson,* the court stated that the interest on taxes accrues after death, whereas administration expenses "accrue at death." As a result, the court determined that payment of interest on taxes from estate income does not affect the principal of the estate as it existed at the time of decedent's death, but payment of administration expenses from such income "will serve to build up the gross estate." *Id.* at 727. Second, the court noted that section 20.2056(b)-4(a), Estate Tax Regs., specifically mentions administration expenses in its example, but it does not mention interest on taxes. Therefore, the court held that the regulation was inapplicable to interest on taxes. *Id.* at 729. Thus, the Court of Appeals concluded that payment of administration expenses from income of the estate should reduce the marital deduction, but payment of interest on estate and inheritance taxes from income should not reduce the marital deduction. See also *Burke v. United States,* 994 F.2d 1576 (Fed. Cir. 1993), and *Fisher v. United States,* 28 Fed. Cl. 88 (1993), which rely on the rationale of *Estate of Street* with respect to administration expenses.

Respectfully, we disagree with the reasoning of the Court of Appeals and decline to follow its decision in *Estate of Street.* As stated above, we interpret section 20.2056(b)-4(a), Estate Tax Regs., to be a valuation provision. Therefore, unlike the Court of Appeals, we find that the regulation does not control the case before us. In addition, as noted pre-

viously, we conclude that the legislative history of the marital deduction does not mandate a different conclusion.

Moreover, we take issue with the Court of Appeals' analysis of the effect of income and expenses on the marital share. The court stated that income earned on estate property increases the marital share, and presumably the marital deduction, leading to a deduction greater than the amount distributed if payment of expenses from income does not reduce the marital deduction. However, income earned on estate property is not included in the gross estate. *Alston v. United States,* 349 F.2d 87 (5th Cir. 1965). As a result, under section 2056(a), such income does not lead to an increase in the amount of the marital deduction requiring a corresponding decrease for payment of administration expenses chargeable against income of the estate.

Finally, we disagree with the Court of Appeals' distinction between interest on estate and inheritance taxes and administration expenses. The fact that section 20.2056(b)-4(a), Estate Tax Regs., explicitly refers to administration expenses but does not mention interest on taxes is not relevant because the reference to administration expenses is "*An* example of a case in which this rule *may* be applied". Sec. 20.2056(b)-4(a), Estate Tax Regs. (emphasis added). Application of the regulation, when appropriate, is clearly not limited to administration expenses. Regardless of the regulation's treatment of administration expenses and interest on taxes, it does not provide a useful distinction between the two.

In addition, administration expenses and interest on taxes cannot be distinguished according to the time at which they accrue. Both accrue after the date of death. Administration expenses, by their very nature, are incurred over the entire period of the estate's administration and can vary significantly from estate to estate. As a result, administration expenses are too uncertain at the date of death to accrue at that time. Our analysis in *Estate of Richardson v. Commissioner,* 89 T.C. 1193 (1987), therefore applies to administration expenses as well as to interest on taxes, and we will follow our holding in that case.

Both respondent and the Court of Appeals cite *Estate of Roney v. Commissioner,* 33 T.C. 801 (1960), affd. 294 F.2d 774 (5th Cir. 1961), as support for their positions. In *Estate*

*of Roney,* the decedent left the residue of his estate to his wife. The will made no provision as to the source for payment of administration expenses. The executor deducted the administration expenses on the estate's fiduciary income tax returns and did not reduce the marital deduction on the estate tax return by the amount of those expenses. In that case, we looked to Florida law and determined that the executor was required to pay administration expenses out of the residuary estate. Since the residuary estate does not include income, we determined that the marital deduction should be reduced by the amount of the expenses because the amount of principal received by the spouse was reduced to that extent.

The holding in *Estate of Roney* is not inconsistent with the result we reach in the case before us. We merely held in *Estate of Roney* that when administration expenses are required to be allocated to principal, the marital deduction is reduced by the amount of those expenses. Whether the deduction for the administration expenses is taken on Form 706 or Form 1041 is immaterial and irrelevant. See also *Alston v. United States, supra.*

Although *Estate of Wycoff v. Commissioner,* 59 T.C. 617 (1973), affd. 506 F.2d 1144 (10th Cir. 1974), was not cited by either party, we find it appropriate to discuss that case here. In *Estate of Wycoff,* the decedent's will provided:

"all inheritance, estate and transfer taxes due by reason of my death shall be paid out of that portion of my estate which is not included in the Marital Trust to be administered by my Trustee, unless, in the best business judgment and sole discretion of my executor, such taxes could be more prudently paid from any assets in my estate without respect to what is or is not included in the Marital Trust * * *" [*Id.* at 619.]

Based upon the above election available to the executor, we concluded that the marital trust might be charged with those taxes and that the marital deduction was accordingly reduced. We distinguish that case on its facts.

The executor's choices in *Estate of Wycoff* were between two shares of the estate, the marital trust and the nonmarital trust, both of which were included in the gross estate, and not between principal and income, where only principal would be included in the gross estate and income would be accounted for and taxed separately, as noted above.

We decline to read *Estate of Wycoff* more broadly to make the result depend entirely on the discretion of the executor. We will confine *Estate of Wycoff* to its facts and to the more narrow interpretation which we believe was intended by the Court.

Respondent cites Ga. Code Ann. section 53-2-101 (Michie 1982) as support for the contention that Georgia law requires expenses to be allocated to principal rather than income. However, that section only requires allocation of expenses to the principal if no other provisions are made by the will. Ga. Code Ann. section 53-15-3 (Michie 1982) allows decedents to grant their executors the power to allocate expenses between principal and income. Decedent, in this case, clearly granted such power to his executors.

Finally, we conclude that the settlement agreement did not alter decedent's grant of the power to allocate expenses. The settlement agreement merely set forth a formula for determining the final amounts of both income and principal to be received by Mrs. Hubert and the charity. That this is the case is demonstrated by the fact that both parties agree the marital portion, as calculated under the settlement agreement, should be reduced by income in order to determine the marital deduction. The fact that the settlement agreement provided for allocation of expenses between the marital and charitable portions does not preclude the executors from allocating those expenses to income rather than principal within those portions pursuant to the 1982 will.

Respondent cites a variety of cases in support of the contention that the marital and charitable deductions must be reduced by expenses. However, none of those cases is on point. They deal with situations in which the will made no provision for the allocation of expenses and, therefore, the statute controlled the allocation. Here, we clearly have a provision in the will which controls the allocation.

We hold that the allocation of petitioner's expenses to income was permitted by Georgia law, and the marital and charitable deductions are not reduced by expenses so allocated.

*Imputed Income*

The third issue we must decide is whether the marital and charitable portions must be discounted by 7 percent per annum to take into account income deemed to be earned by the residue.

The parties agree that the amounts of the marital and charitable deductions should be based on the date-of-death value of the residue. The parties also agree that the marital and charitable portions as determined by the settlement agreement must be reduced by accumulated income included in those portions to arrive at the date-of-death value of the principal which will constitute the deductible amounts. The parties disagree about the amount that should be subtracted as income. Petitioner contends that actual income figures should be used. Respondent argues that an imputed figure of 7 percent per annum should be used. We agree with petitioner.

Respondent argues that Georgia law requires us to impute income of 7 percent per annum to the marital and charitable portions and determine the deductions in that manner. Respondent relies on Ga. Code Ann. section 53-2-97 (Michie 1982), which states: "A general legacy usually bears interest after the expiration of 12 months from the death of the testator", and Ga. Code Ann. section 7-4-2 (Michie 1982), which established 7 percent per annum as the legal rate of interest where an interest rate is not established, as support for the imputed income argument. However, those sections are not controlling.

In this case, we are not charged with the task of determining the amounts of income the marital and charitable shares were required to receive. We are charged with determining what amount of the residue went to deductible administration expenses and marital and charitable bequests. In making that determination, we must look to the residue at the date of death. *Jackson v. United States,* 376 U.S. 503, 508 (1964).

At the time of decedent's death, the amount of the residue was a definitely determinable amount. Under the settlement agreement, that amount was divided among the marital and charitable portions, which included income to the date of settlement, and the administration expenses. Despite the

agreement's complex language and respondent's contention that the agreement is much more complex, the result is, in fact, very simple. The entire residue is divided among three deductible portions, making the entire residue deductible no matter how much income was or should have been earned later.

The value of the corpus at the date of death is the value used in determining the deductions. Any use of income figures is merely to determine the amount of income allocated to each of the portions; for that determination, it is appropriate to use actual income figures. For our purposes, however, that determination is irrelevant, since the corpus allocated to each of the portions is deductible.

We hold that the marital and charitable portions should not be discounted 7 percent per annum for income deemed to be earned by the residue in order to arrive at the marital and charitable deductions. Date-of-death values should be used. If the parties need income figures for purposes of the Rule 155 computation, actual income figures should be used.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

PARKER, SHIELDS, COHEN, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WELLS, RUWE, WHALEN, COLVIN, CHIECHI, and LARO, *JJ.*, agree with the majority opinion.

HAMBLEN, *C.J.* did not participate in the consideration of this opinion.

---

HALPERN, *J.,* concurring in part and dissenting in part:

I. *Limitations on Deductions Based on the 1982 Will*

A. *Settlement Agreement: Marital Deduction*

Mrs. Hubert challenged the will of her late husband on the ground that it was executed under undue influence in favor of certain charitable beneficiaries. Pursuant to the second and final settlement agreement (the settlement agreement), to which respondent was not a party, Mrs. Hubert received from the estate of Mr. Hubert (the estate) an amount in excess of what she would have received under her late husband's last will. The majority holds that the marital deduc-

tion is determined based on the amount received by Mrs. Hubert under the settlement agreement. Majority op. p. 321. Necessarily, the majority has found that Mr. Hubert's last will (the 1982 will), or at least the second codicil thereto (which reduced the amount Mrs. Hubert was to receive), is invalid, as having been procured by undue influence. See Ga. Code Ann. sec. 53-2-6 (Michie 1982) (undue influence invalidates a will). I cannot agree with that finding because I believe that it is unsupported by the evidence.

### 1. *Property Must Pass From the Decedent*

Section 2056 permits a marital deduction only with respect to property that "passes or has passed *from the decedent* to his surviving spouse" (emphasis added). Accordingly, if property passes from the decedent to *other* than his surviving spouse, no marital deduction is allowable, even if the property is promptly relinquished to the surviving spouse. E.g., *Estate of Suzuki v. Commissioner,* T.C. Memo. 1991-624. Of course, a dispute may arise as to whether, or to what extent, property *does* pass from the decedent to a surviving spouse. An agreement may be reached whereby such claims are settled other than by decision of a court. As a rule, the Commissioner is not a party to such agreements. In such case, the Commissioner may or may not accept the agreed allocation to the surviving spouse as reflective of what actually passed to her from the decedent. At one time, this Court took the position that, so long as the settlement agreement was "made in good faith as a result of arm's-length bargaining", property received by the surviving spouse *necessarily* had "passed from the decedent" and thus might qualify for the marital deduction. *Estate of Barrett v. Commissioner,* 22 T.C. 606, 611 (1954). That view, however, has been repudiated by the Supreme Court, see *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967), and, indeed, today, this Court *appears* to abandon it. Majority op. p. 319.

### 2. *The Inquiry at Hand*

Correctly, I believe, the majority characterizes the nature of our inquiry as follows: "In deciding whether the surviving spouse has enforceable rights in a decedent's estate, courts must look behind any settlement agreement to ensure that the claim on which it is based is valid." Majority op. p. 319.

Also, like the majority, I would not ignore the settlement agreement. Indeed, the regulations contemplate that a settlement agreement *may* provide a bona fide evaluation of the rights of the spouse in the decedent's estate. See sec. 20.2056(e)-2(d)(2), Estate Tax Regs. Based on the majority's analysis, however, it is difficult for me to see how the majority has not simply accepted the bona fides of the settlement agreement as determinative of (1) the invalidity of Mr. Hubert's will (or, at least, the second codicil thereto) and, consequently (2) the validity of Mrs. Hubert's claim. If the majority has done that, then it has merely repackaged old (and bad) wine into new bottles, see *Estate of Barrett v. Commissioner, supra,* and not undertaken the full investigation it has promised.

### 3. *Burden of Proof*

Petitioner has the burden of proving that Mrs. Hubert was entitled, under decedent's last valid will, to the entire amount received under the settlement agreement. Rule 142(a); cf. *Estate of Rowan v. Commissioner,* 54 T.C. 633, 639 (1970) (if, pursuant to *Commissioner v. Estate of Bosch, supra,* we must determine property rights under State law, under normal rule assigning burden of proof, petitioner has burden of proving facts that support his assignment of error). To carry that burden, petitioner must prove its assertion that the second codicil to the 1982 will (or perhaps the 1982 will itself) is the product of undue influence and therefore invalid.

### 4. *The Settlement Agreement*

The only direct evidence relied on by the majority in reaching its conclusion that petitioner has carried its burden is the settlement agreement itself. The settlement agreement, however, does not even *assert* that any of decedent's wills or codicils is invalid on account of undue influence, and, thus, by its language alone, cannot constitute evidence in support of that proposition.[1] Nevertheless, accepting for the sake of argument that Mrs. Hubert's claim of undue influence is not without *some* merit, the settlement agreement *might* con-

---

[1] I am by no means convinced that, if the settlement agreement did make an assertion in that regard (as it might have if such agreement resolved other disputes as well and the parties thereto agreed as to who purportedly prevailed on each issue), such assertion would be credible evidence. That question, however, need not be resolved today.

stitute persuasive evidence of the validity of that claim (i.e., that the will or codicil *was* obtained by undue influence) *if* the amount received pursuant to the settlement agreement approximated what Mrs. Hubert would have received had she prevailed on her claim in the absence of a compromise. In other words, we might equate the *strength* of her claim with the *degree* of her financial success.

### 5. *Mrs. Hubert's Financial Success*

On the whole, the majority gives us scant information to judge the degree of Mrs. Hubert's financial success. We know only that, pursuant to the settlement agreement, she received in value (1) more than half of what she would have received if she had succeeded in having the second codicil declared invalid and (2) substantially all of what she would have received if she had succeeded in having the 1982 will itself declared invalid. Majority op. p. 320. We are provided with no numbers or any finding as to whether the will itself or only a codicil is invalid. The majority does state that the settlement agreement amended the 1982 will and codicils by deleting that provision in the will that disposed of the residuary estate, and all related codicil provisions. Majority op. p. 317. Such evidence would thus suggest that an assumption of the parties to the settlement agreement was that the 1982 will otherwise remained intact.[2] From the record, we also learn (although the majority does not tell us) that Mrs. Hubert's interest in the residue of the estate under the 1982 will and codicils had a value equal to only 48 percent of the value of the residue and that the value of what she received under the settlement agreement had a value equal to approximately 50 percent of that residue. Had she succeeded in having the second codicil declared invalid, she would have restored her power of appointment over the residue and thus would have enjoyed 100 percent of its value. It is thus true, as the majority claims, that, under the settlement agreement, by obtaining approximately 50 percent of the residue, she received in value more than half of what she would have

---

[2] That also would seem to be the assumption made by the majority. In a companion case to this case, *Estate of Hubert v. Commissioner,* T.C. Memo. 1993-482, Judge Clapp, the author of the majority opinion here, addresses a charitable bequest passing pursuant to the 1982 will (and not affected by the settlement agreement). The 1982 will is quoted verbatim as giving rise to the bequest. The 1977 will is not mentioned.

received on her primary claim (that the second codicil was invalid). Nevertheless, that is *not* the important comparison. The *important* comparison is between what she received and what she would have received had she *not* made any claim in the first place. That comparison is between 48 percent of the residue (what she would have received under the second codicil) and approximately 50 percent (what she did receive). Thus, *as a measure of her success,* she received *approximately 4 percent* of what she claimed. That is *not* persuasive evidence that her claim was strong.

### 6. *Other Evidence*

Putting aside Mrs. Hubert's apparent lack of financial success, we are left with a finding by the majority based on the bona fides of the transaction:

this was a settlement among adverse parties with significant interests to protect in the litigation, including the Georgia attorney general and the Georgia revenue commissioner, whose right to participate in the litigation was litigated all the way to the Supreme Court of Georgia. The settlement agreement also was approved by the Superior Court of Cobb County. Under Georgia law a settlement agreement sustaining a will challenge can be approved by the superior court only "after a hearing * * * at which the judge finds * * * that the caveat is meritorious." * * * [Majority op. pp. 320-321.]

The regulations establish a presumption that a transfer to a surviving spouse is in recognition of enforceable rights in the decedent's estate if it is pursuant to a decision by a local court upon the merits in an adversary proceeding following a genuine and active contest. Sec. 20.2056(e)-2(d), Estate Tax Regs. There is *no* indication that such a proceeding occurred here, and the majority fails to explain what weight (or meaning) it gives to the superior court's finding that the settlement agreement was "meritorious". It is unclear whether the majority takes the superior court's finding to mean anything more than that, *if proven,* Mrs. Hubert's claim would entitle her to the relief prayed for. If so, then that does not constitute any evaluation of the *strength* of her claim, or convincing evidence that the 1982 will (or second codicil) was invalid.

Likewise, what are we to make of the majority's reliance on the "adverse", "significant" interests of the parties to the settlement agreement, without the majority, *at the same*

*time,* taking into account the *degree* of Mrs. Hubert's success? In *Estate of Barrett v. Commissioner,* 22 T.C. 606, 611 (1954), we dealt with the settlement of a surviving spouse's claim against the estate and said:

Our finding as a fact that * * * [the surviving spouse's] claim was a valid one made in good faith and settled as the result of arm's-length negotiations is enough to qualify it as a bona fide claim within the purview of the regulations [the predecessor to sec. 20.2056(e)-2(d)(2), Estate Tax Regs.].

If we disregard the *degree* of Mrs. Hubert's success, are we not right back to our position in *Estate of Barrett* (looking to the bona fides of the agreement), which today we seem to repudiate?

### 7. *Commissioner v. Estate of Bosch*

The lesson of *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967), is that respondent, having been absent from the State court proceeding that established rights to the decedent's property, is entitled to her day in Federal court, unless she could not there prevail. Here, we have a question of fact, for which petitioner bears the burden of proof. The evidence in this case, as analyzed by the majority, does not convince me that Mr. Hubert's 1982 will (or at least the second codicil thereto) was invalid. Indeed, based on the lack of Mrs. Hubert's financial success, I would find to the contrary. For that reason, I cannot agree with the majority's holding that the marital deduction is determined based on all of what Mrs. Hubert received under the settlement agreement, and would limit the deduction to what she received under Mr. Hubert's 1982 will and the codicils thereto.

### B. *Settlement Agreement: Charitable Deduction*

Apparently, respondent has conceded that, whether or not we find decedent's last will (or the second codicil thereto) to be invalid, the estate is entitled to a charitable deduction equal to the lesser of the amount the charity would have received under the 1982 will or the amount it actually received under the settlement agreement. Majority op. p. 322. We thus need not determine whether the estate's charitable deduction is limited to the amount that would have been received under decedent's last valid will, as properly

interpreted under State law.[3] Assuming that the majority here has found that the second codicil to decedent's 1982 will, but not the will itself, is invalid, the amount passing to the charity pursuant to the settlement agreement may well exceed the value of what it was entitled to pursuant to such will (i.e., the amount of the residue not appointed by Mrs. Hubert).

Respondent has stipulated that "the Second Settlement Agreement modified the 1982 Will and three Codicils so that the split interest provisions under I.R.C. section 2055(e) [do] not bar a deduction for the charitable gift". Although I am by no means convinced that a settlement agreement can transform a nonqualifying interest into a qualifying interest, I would simply accept respondent's concession in this case and leave that question for another day.

## II. *Allocation of Expenses*

The second issue addressed by the majority is whether the marital and charitable deductions must be reduced by expenses allocated to income of the estate. The majority holds that such deductions need not be so reduced. Majority op. p. 331. With regard to the marital deduction, the majority considers section 2056(b)(4) and section 20.2056(b)-4(a), Estate Tax Regs., and finds that the trustee's discretion to pay administration expenses out of income is not a material limitation on the right to receive income. Majority op. p. 325. In his separate opinion, Judge Beghe calculates the relevant amounts of income and administration expenses. Like Judge Beghe, I cannot conclude that what the majority character-izes as the "trustee's discretion" is an immaterial limitation on the surviving spouse's right to receive income from prop-

---

[3] Compare *Estate of Warren v. Commissioner,* 93 T.C. 694, 726-727 (1989) (where (1) acknowl-edging the application of *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967), to our evaluation of an "agreed final judgment" settling the rights of a charitable beneficiary to a portion of the residue of the decedent's estate (2) we rejected the agreed judgment, determining that it incor-rectly applied State law), revd. and remanded 981 F.2d 776 (5th Cir. 1993) with *Estate of War-ren v. Commissioner,* 981 F.2d 776, 782 (5th Cir. 1993) (where the Court of Appeals for the Fifth Circuit (1) dismissed *Estate of Bosch* as inapplicable and (2) declined to apply the so-called en-forceable rights doctrine to the charitable deduction: "But where the settlement is a *bona fide* resolution of a truly adversarial dispute as to rights of the charity under a will of the decedent, then the forgoing requirement [that what is received by the charity must be received from the decedent and not merely from the beneficiaries of the estate] would appear to be satisfied, for in such a case what the charity receives it receives *as a result and by virtue of* the provisions made for it in the decedent's will, whether or not it receives precisely what it would be entitled to if no settlement had been made."), revg. and remanding 93 T.C. 694 (1989).

erty passing to her, which is to be disregarded in determining the value of such property. See sec. 20.2056(b)-4(a), Estate Tax Regs. I write separately from Judge Beghe, however, because I believe that the majority's error runs much deeper than failing to recognize a material limitation on the right to receive income in this case. The majority adopts an approach that (1) appears inconsistent with section 20.2056(b)-4(a), Estate Tax Regs., (2) is premised upon a misconception concerning the consequence of probate accounting allocations to income and principal in valuing the gross estate and interests therein, and (3) is inconsistent with precedent of this Court.

A. *Inconsistency With Section 20.2056(b)-4(a), Estate Tax Regs.*

Section 20.2056(b)-4(a), Estate Tax Regs., provides that "In determining the value of the interest in property passing to the spouse *account must be taken of the effect of any material limitations upon her right to income from the property.*" (Emphasis added.) The majority resists that directive, however, and adopts a theory under which it appears that *no* limitation on a surviving spouse's right to income would be taken into account, whether material or immaterial. Under the majority's approach, the allocation, for probate accounting purposes, of estate administration expenses between income and principal is critical. Expenses allocated to principal are in all events taken into account in valuing the marital deduction:

If the administration expenses were paid out of principal, they would reduce the amount of such principal received by the beneficiaries and would reduce the marital and charitable deductions. [Majority op. p. 323.]

Income earned by the estate, in the majority's view:

has *no effect* on the estate for Federal estate tax purposes. It is accounted for separately in the estate's probate account and is taxed separately on the estate's Forms 1041. [Majority op. p. 323; emphasis added.]

Such income (in the majority's view) having *no effect* on the estate, it is difficult to see how the *materiality* of any charge against it for administration expenses matters in the least. Indeed, the majority states:

income earned on estate property is not included in the gross estate. * * * As a result, under section 2056(a), such income does not lead to an increase in the amount of the marital deduction requiring a corresponding decrease for payment of administration expenses chargeable against income of the estate. [Majority op. p. 329.]

In the majority's view, apparently, probate income simply is irrelevant to the marital deduction. The majority appears to believe that probate income neither increases nor decreases the surviving spouse's share of property passing from the deceased.

Thus, the majority's rationale is not dependent on the burden of administration expenses being an immaterial limitation on the surviving spouse's right to income from the property. See sec. 20.2056(b)-4(a), Estate Tax Regs. It is enough for the majority that the expenses are paid from *income* rather than *principal*. See majority op. p. 323. The majority cites two cases in support of its broad dichotomy between principal and income: *Estate of Street v. Commissioner,* T.C. Memo. 1988-553, affd. in part, revd. in part and remanded 974 F.2d 723 (6th Cir. 1992), and *Estate of Richardson v. Commissioner,* 89 T.C. 1193 (1987). Neither case, however, explains how we might be justified in declining to take into account material limitations on a surviving spouses's right to income, as section 20.2056(b)-4(a), Estate Tax Regs., directs. Indeed, neither case contains any meaningful discussion of that regulation, and *Estate of Street* fails even to mention it. Accordingly, I believe that the theory adopted by the majority is inconsistent with section 20.2056(b)-4(a), Estate Tax Regs., and, therefore, invalid.

B. *The Majority's Misconception About Probate Accounting Allocations to Income and Principal*

In distinguishing between charges to probate-accounting principal and income,[4] the majority relies upon the assumption that, although principal is included in the gross estate, income is not. ("[I]ncome earned on estate property is not included in the gross estate." Majority op. p. 329.) That distinction, however, simply will not hold. The gross estate

---

[4] Principal and income are probate-accounting concepts that sometimes are necessary to determine, *for probate accounting purposes,* the allocation of post mortem charges or changes in value among temporal interests carved out of probate property (e.g., a life estate and remainder). That distinction is not necessarily significant for a given tax purpose.

includes, generally, the decedent's interest in "all property, real or personal, tangible or intangible, wherever situated." Secs. 2031, 2033. Such (included) property interests are valued as of a particular time: either the date of decedent's death or the alternate valuation date (hereinafter the appropriate valuation date). Secs. 2031 and 2032. Nothing in that scheme supports the proposition that either principal or income is includable in the gross estate to the exclusion of the other. Rather, because the value of the gross estate consists of decedent's interest in both principal and income, both of those components are included in the gross estate.[5] Only by considering principal and income as a *unit,* and only by discounting them together to their present value as of the appropriate valuation date, can the gross estate properly be valued. The allocation between the two is not relevant to that determination.

Thus, consider a zero coupon bond included in the gross estate at a value of $1,000. One year after the appropriate valuation date, the bond is sold for $1,100. Proceeds are allocated $1,000 to principal and $100 to income. Implicitly, the rate of return to the estate with regard to the bond is 10 percent. Thus, the appropriate-valuation-date present values of such principal and income are, approximately, $910 and $90, respectively, or $1,000, together. If the bond were sold 2 years after the appropriate valuation date for $1,210, with $1,000 allocated to principal and $210 to income, the appropriate-valuation-date present values of principal and income would be, approximately, $826 and $174, respectively, or, again, $1,000, together. Only if the bond is sold immediately on the appropriate valuation date for its value of $1,000 would the allocation to principal of $1,000 have an appropriate-valuation-date present value of the same amount. Comparing principal and interest, on the one hand, to the value of assets included in the gross estate, on the other, presents somewhat of an apples-and-oranges problem. Unless adjustments are made for differences in the times of measurement, the comparison can be misleading.

Accordingly, I believe the majority is undone by its view that income earned on estate property is not included in the

---

[5] It is true, of course, that income *actually earned* on such property during the period of estate administration is not included in the gross estate. The gross estate, however, *does* include the *discounted* value of post mortem income *expected to be earned* during estate administration.

gross estate. Once it is accepted that income earned on estate property (as anticipated at the appropriate valuation date) *is* included in the gross estate, the next question is whether, but for the use of such income to pay administration expenses, it would be received by the surviving spouse or charitable beneficiary. If the answer is yes, then it follows easily that, when such income is used for administration expenses, rather than received by the surviving spouse or charitable beneficiary, the value of the interest passing from the decedent to the surviving spouse or charitable beneficiary is decreased. Thus, for example, if the residue of the probate estate is bequeathed to a qualifying charity, and administration expenses properly are paid from such residue, then the value of the interest passing from the decedent to the charitable beneficiary is less than the estate-tax value of the residue, regardless of whether, *for probate accounting purposes,* such expenses properly are allocable to income or principal with regard to the assets of the residue.

Two Courts of Appeals have taken precisely that position. The Court of Appeals for the Federal Circuit recently has concluded that administration expenses charged to the residue of the probate estate reduce the estate-tax value of that residue for purposes of the charitable deduction. *Burke v. United States,* 994 F.2d 1576, 1581 (Fed. Cir. 1993) ("In sum, when a decedent dies, a finite amount known as the gross estate is legally created. Any deductions for expenses incurred in administering the estate are theoretically derived from this amount and, regardless of the actual source of payment, must be accounted for within the gross estate."). The Court of Appeals for the Fifth Circuit has expressed similar sentiments:

No amount of legalistic legerdemain can produce from * * * [the cited] cases "the principle that where expenses of administration are paid out of post-mortem income, the amount of corpus available for charity is not diminished by such payments * * *" as argued by the executors.

*Alston v. United States,* 349 F.2d 87, 89 (5th Cir. 1965); cf. *Estate of Horne v. Commissioner,* 91 T.C. 100, 109 (1988) (amount of residue qualifying for estate-tax charitable deduction must be reduced by executor's commissions chargeable under State law to principal but actually paid from post mortem income).

For the foregoing reasons, I think the majority errs in assuming that the gross estate does not include income earned on estate property during estate administration and therefore errs, on facts such as here existing, in failing to reduce the marital and charitable deductions where the surviving spouse or charitable beneficiary does not receive such income from the estate.

## C. *Inconsistency With Precedent of This Court*

In my view, the majority gives insufficient attention to *Estate of Wycoff v. Commissioner*, 59 T.C. 617 (1973), which, until overruled, should be controlling herein. In *Estate of Wycoff*, the executor had the discretion to pay certain expenses from either the marital trust or the nonmarital trust. We held that the executor's *discretion* to invade the marital trust reduced the value of the marital deduction. Our reasoning, though debatable, was quite clear: (1) The interest passing to the surviving spouse is measured at the appropriate valuation date (later events are irrelevant), and (2) the possibility (existing at that time) that the executor would choose to invade the marital, rather than nonmarital, trust reduced the value of the interest passing at such time to the surviving spouse. *Id.* at 622-623.

The *Mappes* case [318 F.2d 508, 510-511 (10th Cir. 1963)] makes it clear that for purposes of the marital deduction whether an interest passing to the surviving spouse qualifies is a question which must be determined at the time of the decedent's death. It is not a determination affected by later events which may or may not happen. The case of *Estate of Albert L. Rice* [41 T.C. 344 (1963), vacated and remanded sub nom. *Boston Safe Deposit & Trust Co. v. Commissioner*, 345 F.2d 625 (1st Cir. 1965)], *supra,* stands for the application of this proposition to the valuation area. In that case a marital deduction was limited to the interest passing to the surviving spouse reduced by its apportioned share of Federal estate and State inheritance taxes. This was so in spite of the fact that the trustee exercised his discretionary power and paid all the taxes from the assets of the nonmarital trust. [*Id.* at 623.]

The majority dismisses *Estate of Wycoff* because the executor's choice there was between marital and nonmarital trusts, whereas here the choice was between principal and income. Majority op. p. 330. In so doing, the majority declines "to read *Estate of Wycoff* more broadly to make the result depend entirely on the discretion of the executor" and con-

fines *Estate of Wycoff* "to its facts and to the more narrow interpretation which [it believes] was intended by the Court." Majority op. p. 331. The majority fails, however, to specify any interpretation of *Estate of Wycoff* that would be consistent with the result reached today and, indeed, I believe there is none. Although I am by no means convinced that *Estate of Wycoff* reaches the proper result, I think the majority is remiss in failing to follow *Estate of Wycoff,* which it declines to overrule.

### III. *Discounting of Marital and Charitable Portions*

The third issue is whether the marital and charitable portions must be discounted by 7 percent per annum to take into account income deemed to be earned by the residuary under Georgia law. See Ga. Code Ann. sec. 53-2-97 (Michie 1982). The majority observes, and the parties agree, that the marital and charitable deductions should be based on the date-of-death value of the residuary. Majority op. p. 332. The majority continues to observe that the *actual* date-of-death value of the residuary is known (or at least "definitely determinable"). Majority op. p. 332. Accordingly, I agree with the majority that no adjustment is necessary to arrive at that figure.

BEGHE, *J.,* agrees with this opinion.

---

BEGHE, *J.,* concurring in part and dissenting in part: Having joined Judge Halpern's concurring and dissenting opinion, I also write separately to emphasize my dissent from various aspects of the Court's holding that the payments of estate administration expenses from income do not reduce the marital and charitable deductions allowable for Federal estate tax purposes. In the case at hand, as in other recent estate tax cases in which administration expenses were claimed as income tax deductions, the Court's opinion has the effect of abetting a post mortem estate planning blunder or maneuver. See *Estate of Street v. Commissioner,* T.C. Memo. 1988-553, affd. in part, revd. in part and remanded 974 F.2d 723 (6th Cir. 1992); see also *Estate of McInnes v. Commissioner,* T.C. Memo. 1992-558; *Estate of Young v. Commissioner,* T.C. Memo. 1992-551.

The majority interpret section 20.2056(b)-4(a), Estate Tax Regs., as not requiring a setoff against the marital deduction for administration expenses paid from income, but as being "merely a valuation provision which requires material limitations on the right to receive income to be taken into account when valuing the property interest passing to the surviving spouse." Majority op. pp. 324-325. The majority opinion goes on to say:

The fact that income from property is to be used to pay expenses during the administration of the estate is not necessarily a material limitation [within the meaning of section 20.2056(b)-4(a), Estate Tax Regs.] on the right to receive income that would have a significant effect on the date-of-death value of the property of the estate. [Majority op. p. 325.]

and that

Moreover, the income used to pay administration expenses is insubstantial compared to the lifetime of income Mrs. Hubert will receive from the property. * * * [Majority op. p. 325.]

In so saying, the majority opinion falls short in a variety of ways: (1) It creates the impression that charging estate administration expenses against income can never have a significant effect on the values of the income interests of the surviving spouse and charitable beneficiaries of the estate; (2) it strengthens that impression by providing no sense of the substantial amounts that have already been charged against and paid from the income rights of the marital and charitable residuary interests;[1] (3) it opens the barn door to substantial but unknown additional amounts being so charged and paid in the future, without regard to the fact that these additional charges would further reduce the values of the residuary interests of the surviving spouse and the charities;[2] and (4) it does not separately address the effect on the estate tax charitable deduction of charging the administration expenses to the income of the residuary

[1] Although, as the majority observe, majority op. p. 323, the payment of administration expenses from income does not reduce the estate principal received by or set aside for the surviving spouse and the charities, the payment of the expenses from income necessarily reduces the income to which those residuary legatees would otherwise be entitled. As a result, the values of the property interests actually received by the residuary legatees have been reduced.

[2] In this regard, the executors have candidly expressed the intention, if their contentions on this issue should be upheld, to charge all subsequent estate administration expenses, including the legal fees of this proceeding, to the income of the residuary interests, and also to claim these expenses as deductions for Federal income tax purposes. As a result, the values of the residuary interests will be further reduced in some currently unknown but probably substantial amounts.

estate; in this last respect the majority have decided not to apply the decisions of the Court of Appeals for the Federal Circuit in *Burke v. United States,* 994 F.2d 1576 (Fed. Cir. 1993) and the Court of Appeals for the Fifth Circuit in *Alston v. United States,* 349 F.2d 87 (5th Cir. 1965), and to depart from the approach we took in *Estate of Warren v. Commissioner,* 93 T.C. 694 (1989), revd. on other grounds and remanded 981 F.2d 776 (5th Cir. 1993), and *Estate of Horne v. Commissioner,* 91 T.C. 100 (1988).

The majority's argument with respect to the marital deduction, that Mrs. Hubert must be considered to have received the entire value of both marital trusts, because she has a general power of appointment over one, and the other is a QTIP trust, see majority op. p. 327, is also misplaced. This argument glides over the requirement that the surviving spouse, irrespective of whether she has a general power of appointment or the QTIP provisions are otherwise satisfied, must have the unqualified right to receive the entire income of the property interest with respect to which the marital deduction is being claimed, if the full marital deduction for the value of that property interest is to be allowed. *Northeastern Pa. Natl. Bank & Trust Co. v. United States,* 387 U.S. 213 (1967); H. Rept. 1337, 83d Cong., 2d Sess. 92 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 125 (1954). If and to the extent that right to income is reduced, the allowable marital deduction is cut back, cf. *Estate of Alexander v. Commissioner,* 82 T.C. 34 (1984), affd. without published opinion 760 F.2d 264 (4th Cir. 1985), if not completely disallowed, see sec. 20.2056(b)-5(b), Estate Tax Regs.; cf. Energy Policy Act of 1992, Pub. L. 102-486, sec. 1941, 106 Stat. 3036; H. Conf. Rept. 102-1018, at 432 (1992). See generally Kasner, "Recent Legislation and Pecuniary Marital Deduction Bequests", Tax Notes 1094 (May 24, 1993).

Although the stipulated record in this case is not as clear as it should be, the actual amounts in issue belie the majority's conclusion that the residuary interests have not already been subjected to a "material limitation" within the meaning of section 20.2056(b)-4(a), Estate Tax Regs.:

| | |
|---|---|
| Gross estate | $30,254,219 |
| Marital share | 13,353,572 |

| | |
|---|---|
| Charitable share ................................................................ | 12,870,864 |
| Residuary estate ............................................................... | 26,224,436 |
| Income distributed to Mrs. Hubert through 5/31/90 ............. | 1,219,603 |
| Income distributed to Mrs. Hubert through 5/31/90 from other interests qualifying for marital deduction ............... | 699,376 |
| | 1,918,979 |
| Income used to pay administrative expenses through 5/31/90 and deducted for income tax purposes .................. | 1,458,445 |
| Post-settlement agreement income through 9/26/91 ............. | 1,173,171 |
| Post-settlement administrative expenses charged to income and deducted for income tax purposes ............................. | 548,414 |

It thus appears that, for the first 5 years' administration of the estate, the income interests of the surviving spouse and the charities have been substantially burdened and materially limited by the payment of estate administration expenses, which have been both charged to income and deducted for Federal income tax purposes. These administration expenses have been substantially in excess of the "trustee's commissions, and other charges", majority op. p. 325, of administering an estate or trust in the ordinary course that can be paid out of income without depriving the surviving spouse beneficiary of the required substantial beneficial enjoyment within the meaning of section 25.2523(e)-1(f)(3), Gift Tax Regs. See also sec. 20.2056(b)-5(f)(3), Estate Tax Regs. During this 5-year period, the estate generated gross income of no less than $4.5 million, of which approximately $2 million was used to pay administration expenses that were charged to income and deducted for Federal income tax purposes. If it be assumed that these expenses were paid ratably over the 5-year period following decedent's death, the equivalent of a 5-year annuity of approximately $400,000 has been charged against the income interests of the surviving spouse and the charities. Such an annuity would have had a date-of-death present value of $1,511,352 (using the 10-percent table B of sec. 20.2031-7(f), Estate Tax Regs., applicable to estates of decedents dying after November 30, 1983, and prior to May 1, 1989), and the marital and charitable deductions should be reduced accordingly.

Rather than reducing the widow's marital share and the charitable share dollar for dollar, or approximately $2 mil-

lion, as argued by respondent,[3] based on the amounts actually charged against income, I would apply the majority's interpretation of section 20.2056(b)-4(a), Estate Tax Regs., as a valuation provision to reduce the aggregate marital and charitable deductions by the date-of-death present value of the annuity charged against the residuary interests in the estate.[4] Assuming that the expenses were charged against both the marital and charitable residuary interests, the marital and charitable deductions should be reduced in the same proportions that they bear to the total residuary estate. The same general approach should be used to determine the estate tax effects of estate administration expenses subsequently incurred and paid that petitioner actually charges to income and claims as income tax deductions.

In dealing with this problem, will drafters, estate administrators, and the courts should be under no illusions about the potential benefits and amounts at risk in claiming estate administration expenses as income tax deductions. Under the majority's approach, there is a substantial tax benefit in claiming income tax deductions for expenses paid from income that would otherwise accrue to the marital and charitable residuary shares. The benefit is that the estate tax deductions for the value of the principal amounts passing to or for the benefit of the surviving spouse and the charitable beneficiaries are not reduced by the expenses. Yet those expenses are also allowed as income tax deductions, in effect creating a double deduction that "would violate the spirit, if not the literal language, of section 642(g)." Gans, "Will Administration Expenses Charged to Income Reduce the Marital Deduction?", 71 J. Taxn. 90, 91 (1989). However, the benefits of the double deduction will be exceeded, if the maneuver is held to be unsuccessful—as it should be—by the

---

[3] Under the terms of the settlement agreement, the division of the residuary between the marital and charitable shares was 52 percent and 48 percent, respectively. The record does not indicate the amounts of income distributed or held for distribution to the charitable beneficiaries. In any event, it appears that the income used to pay estate administration expenses during the first 5 years of the estate's administration was no less than 20 percent of the estate's income during this period, a not insignificant amount.

[4] I am aware that this approach is arguably contrary to the view, represented by such cases as *Estate of Wycoff v. Commissioner,* 59 T.C. 617, 621-623 (1973), affd. 506 F.2d 1144 (10th Cir. 1974), that the reduction in value must be determined as of the date of death by reference to what the executors have the power to do under State law. Because application of this view could have draconian results that would even more seriously encroach upon the marital and charitable shares than respondent's determination in this case, I prefer the approach espoused in the text, which has both "wait and see" and nunc pro tunc aspects.

detriment of the "hall of mirrors" effect under which the amount of any death taxes chargeable against a marital bequest is itself subject to the Federal estate tax. As a result, the estate tax deficiency will chew into and reduce the allowable marital deduction in amounts that will disproportionately exceed, with exponentially incremental effect, the initial amount of the disallowed marital deduction. See 5 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts 129-77 (2d ed. 1993). The same is true of the charitable residuary bequest and the estate tax charitable deduction. *Id.* at 130-30 through 130-33.

The Tax Court stands virtually alone on this issue. The preponderance of academic and professional opinion has been that *Estate of Street v. Commissioner,* T.C. Memo. 1988-553, was incorrectly decided. See Gans, "Will Administration Expenses Charged to Income Reduce the Marital Deduction?", 71 J. Taxn. 90 (1989); Covey, "Administration Expenses and Interest Charged to Income", U. of Miami Estate Planning Conference par. 1701.3 (1990); U.S. Trust Co. of New York, "Operation of Credit Shelter Formula Provision", Practical Drafting 1685-1688 (Apr. 1989); U.S. Trust Co. of New York, "Operation of Credit Shelter-Marital Deduction Formula Provisions", Practical Drafting 3055-3062 (Jan. 1993). But see Kasner, "Marital Deduction Bequests: The Impact of Estate Debts and Expenses", Tax Notes 229 (Apr. 12, 1993).

Because the result in *Estate of Street v. Commissioner, supra,* seemed too good to be true, the commentators cautioned practitioners not to rely on the Tax Court's decision. Practitioners were advised to insulate the marital bequest from the effect of *Estate of Street's* reversal or repudiation by allocating the expenses to the unified credit shelter bequest, with the possibility of a renunciation by the surviving spouse if our decision in *Estate of Street* should be upheld. Such cautionary measures would have been well taken, in view of the reversal of our decision in *Estate of Street* by the Court of Appeals for the Sixth Circuit, 974 F.2d 723 (6th Cir. 1992), its repudiation by the Court of Federal Claims, *Fisher v. United States,* 28 Fed. Cl. 88 (1993), and the recent confirmation by the Court of Appeals for the Federal Circuit, *Burke v. United States,* 994 F.2d 1576 (Fed. Cir. 1993), that there must be a similar reduction of the estate tax deduction for

a charitable residuary bequest when estate administration expenses are paid and deducted from income.

The expenses paid and to be paid from income in this case are so large that such measures would have been and are unavailing to petitioner. Only our refusal to change course stands between respondent's proposed adjustments and the marital and charitable residuary shares. We should stop swimming against the tide and go with the flow.

HALPERN, *J.,* agrees with this opinion.